IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRENDA LARSON, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:08-00446 |
| | ) | JUDGE HAYNES |
| | ) | |
| | ) | |
| LEADING EDGE OUTSTANDING, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Plaintiff, Brenda Larson, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 43 U.S.C. § 2000e et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., against the Defendants: Leading Edge Outsourcing, Inc. ("Leading Edge"), Thomas & Boothe, PLLC, Thomas & Associates CPA's, Thomas Booth, Kevin Thomas and Jerry Taylor for sexual harassment, a hostile work environment, retaliation, and unpaid overtime. Plaintiff also alleges claims under the Tennessee Human Rights Act and state common law employment claims.

Before the Court are the Defendants' motions for summary judgment (Docket Entry Nos. 38 and 44) contending, in sum, that even if all employees of the Defendants are aggregated, the Defendants lack the number of employees to be a covered employer as defined by Title VII. Defendants further argue that Plaintiff's FLSA claims for unpaid overtime against Defendants Leading Edge, Thomas & Boothe, PLLC, or Thomas & Associates CPA's must fail because any overtime was not for those Defendants. Plaintiff argues that the Defendants qualify as an integrated employer for the purposes of her Title VII claims and that Defendants had 15 or more

employees for 26 weeks of 2007, rendering them a covered employer under Title VII. Finally, Plaintiff asserts that Defendants should have known about Plaintiff's overtime work. Defendants have also filed a motion to strike the affidavit of David Barela (Docket Entry No. 65) that was submitted by Plaintiff in response to Plaintiff's motions for summary judgment.

## A. Findings of Fact[1]

Taylor hired Plaintiff Larson in 2006 to work at his accounting firm, Jerry W. Taylor, CPA, a sole proprietorship. (Docket Entry No. 43, Taylor Affidavit at ¶ 2). Effective January 18, 2007, Taylor sold his practice to Thomas & Booth, PLLC that was formed on January 4, 2007 by Defendants Kevin Thomas and Tommy Boothe. Thomas and Boothe was formed to purchase Taylor's practice. (Docket Entry No. 42, Thomas Affidavit at ¶ 4; Docket Entry No. 41, Boothe Affidavit at ¶ 2). After the sale, Plaintiff was also retained, but as an employee of Defendant Leading Edge. (Docket Entry No. 42, Thomas Affidavit at ¶ 12).[2]

Plaintiff was an employee of Leading Edge from January 19, 2007 until her discharge on June 29, 2007. Thomas and Associates, CPA, Thomas's sole proprietorship, had no employees in 2006. Id. at ¶ 2. Thomas & Booth, PLLC was not formed until January 4, 2007 and did not

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes as to whether Defendants are a covered employer under Title VII. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

[2]Mr. Thomas made Plaintiff and the other Lebanon employees Leading Edge employees because he hoped that the business would grow and enable him to offer increased work benefits to a large ground of employees. (Docket Entry No. 42, Thomas Affidavit at ¶ 12).

2

have any employees in 2006. Id. at ¶ 10. The only Defendant with employees in 2006 was Leading Edge that had nine persons on its payroll for the entire year of 2006. Id. Thus, Leading Edge and the Thomas & Boothe entities combined did not employ 15 or more persons for each working day in each of twenty or more calendar weeks in 2006. Id. at ¶ 11. When all possible employees are aggregated, Defendants do not have 20 or more employees for 52 calendar weeks in 2006. Thus, as an "integrated employer," these Defendants are not an employer subject to Title VII for 2006, a fact that Plaintiff does not dispute. (Docket Entry No. 67 at p. 3).

As to 2007, Plaintiff claims that Defendants collectively had 15 or more employees for 26 weeks of 2007, making them an employer subject to Title VII. In support of this assertion, Plaintiff has submitted a chart purporting to list the Defendants' employees that reaches the required threshold under Title VII. (Docket Entry No. 58-1, Appendix Table IV at 42 of 107). The key employees of the Defendants that Plaintiff alleges with specificity[3] who qualify under Title VII for the first 26 weeks of 2007 include: Kelly Bilbrey, Tommy Boothe, Cheryl Clark (for 7 weeks of 2007), Mona Foy, Brenda Larson, Leann Munsey, Gloria Sing, Ashley Speck, Brian Spiller, Hope Spiller, Kevin Billy Thomas, Tammy Thomas, Karen Hobson (for 9 weeks of 2007), Larry Vaughn (for 4 weeks of 2007), Jerry Taylor, Sharon Taylor (Widuch), Mary Ann Taylor, Don Mayberry (for 5 weeks of 2007), and Lori Maslar. According to the chart submitted by Plaintiff, Defendants therefore collectively had exactly 15 employees in 2007 who would

---

[3] Plaintiff includes a number of alleged employees on the chart of Defendants' employees, but for many, offers no support for those employees such as the specific weeks worked, a full name, or their position with the Defendants. The list of alleged employees also includes vague or nonspecific employees such as "Unknown worker No. 1." Under the standards for summary judgment described infra, the Court is not required to accept such unsupported and conclusory allegations, and the Court will only consider those employees whose employment with the Defendants is actually supported in the record.

3

qualify under the 20 week requirement of Title VII.[4]

Maslar, however, became an employee of Defendant Leading Edge on January 1, 2004. (Docket Entry No. 67-2, Thomas Affidavit at ¶ 3). Maslar left her employment with Leading Edge on August 3, 2005. Id. While Maslar worked for a few weeks in 2006, she did not work for any Defendant in 2007. (Docket Entry No. 67-2, Thomas Affidavit at ¶ 3). Plaintiff has not presented any evidence to show Maslar worked for any Defendant in 2007.

In addition, Sharon Weiduct (Taylor)[5] is Defendant Taylor's sister, and only worked for the Defendants during one week in 2007, the week of April 14, 2007, and was issued a 1099 for that work. (Docket Entry No. 67-1, Boothe Affidavit at ¶ 3). Plaintiff does not present any proof that Weiduct was on the Defendants' payroll for any other week. Plaintiff does assert that Weiduct was in the office once or twice a week and they took lunches together, but her testimony on the subject contradicts her deposition testimony that she almost never took a lunch hour. (Docket Entry No. 58-4, Larson Deposition at 176). Plaintiff lacks other proof regarding any additional employment of Weiduct by the Defendants in 2007.

As to Plaintiff's claims for unpaid overtime, Plaintiff has admitted that Defendant Taylor paid her for all the weekend work she alleges she performed, but avers that he did not pay her at a time and a half rate. (Docket Entry No. 58-4, Larson Deposition at 98-99, 235). Plaintiff further admits that she did not tell Defendants Thomas or Boothe that she was working any weekends in any capacity. Id. at 94-95, 98, 180-82. Defendant Taylor paid Plaintiff for the work she did on

---

[4]Under Plaintiff's own chart, Cheryl Clark, Larry Vaughn, Don Mayberry and Karen Hobson did not work for Defendants long enough in 2007 to reach the 20 week threshold of Title VII.

[5]Plaintiff lists Sharon Weiduct (Taylor) as Sharon Taylor (Widuch).

4

the weekends, issued Plaintiff a W-2, and directed her work and working hours and did so for the benefit of Defendant Taylor's own business (collecting his receivables), not for Thomas & Boothe. (Docket Entry No. 43, Taylor Affidavit at ¶¶ 6-7).

## II. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Accord, <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not

5

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the

nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

\* \* \*

Progressing to the specific issue in this case, we are convinced that the inquiry

7

> involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, *the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.* The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'*

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.

> Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Under Title VII, an "employer" is "a person [or any agent of such person] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . ." 42 U.S.C. §

10

2000e(b). A person "includes one or more individuals. . . [or] corporations." 42 U.S.C. § 2000e(a). The "current" calendar year is the year in which the alleged discrimination occurred. Vick v. Foote, Inc., 898 F. Supp. 330, 332 (E.D. Va. 1995). "We construe the Amendment's broad reach as an indication of Congress' desire to have the entire Act broadly construed." Armbruster v. Quinn, 711 F.2d 1332, 1336 (6th Cir. 1983)

As to how many employees an employer has at any given time, the issue is "whether the employer has an employment relationship with the individual on the day in question," Walters v. Metro. Educ. Enterprises, Inc., 519 U.S. 202, 206 (1997). This refers to the "payroll method," because the existence of the employment relationship "is most readily demonstrated by the individual's appearance on the employer's payroll." Id.

The Sixth Circuit has also adopted a "single employer" or "integrated enterprise" doctrine. The basis of the doctrine is when two companies are so interrelated so as to constitute a single employer under Title VII, each is subjected to coverage, although one or both companies separately may not be subject. See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993-94 (6th Cir. 1997).

The Defendants have not conceded generally in this action that they are a single employer for determining whether they are subject to Title VII (or for any other reason). However, for purposes of this motion for summary judgment, the Defendants assume that their employees should be aggregated.

Under Title VII, two companies with substantial identities can be treated as a single employer. Armbruster, 711 F.2d at 1336. The Sixth Circuit has also adopted this test which assesses the degree of: (1) interrelated operations; (2) common management; (3) centralized

11

control of labor relations; and (4) common ownership. See e.g., N.L.R.B. v. Borg Warner Corp., 663 F.2d 666 (6th Cir. 1981), cert denied, 457 U.S. 1105 (1982). While each factor is indicative of interrelation and while control over the elements of labor relations is a central concern, see Sherran v. American Commercial Lines, 683 F.2d 970, 978 (6th Cir. 1982), the presence of any single factor in the Title VII context is not conclusive and all four criteria need not be present in all cases. Armbruster, 711 F.2d at 1337-1338.

The fifteen employee requirement for Title VII coverage is a factual question to be determined on the merits. Arbaugh v. Y & H Corp., 546 U.S. 500, 512 (2006). If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000).

Here, despite Plaintiff's assertions that the Defendants' number of employees is a disputed fact, the record demonstrates that Defendants did not have 15 or more employees during 20 or more weeks of 2007. Although Plaintiff attempts to include Lori Maslar and Sharon Weiduct in the count, Plaintiff does not offer any factual support to demonstrate that these persons worked for the Defendants for more than a few weeks of 2007. Plaintiff's citations to "unknown workers" are also without merit. Plaintiff bears the burden by at least a scintilla of evidence to demonstrate necessary elements of her claim for purposes of summary judgment. Plaintiff has failed to do so here. As such, Plaintiff's Title VII claims should be dismissed.

As to Plaintiff's FLSA claims, Plaintiff asserts that she worked overtime hours for the Defendants for which she was not paid. Plaintiff states that she worked every weekend with Defendant Taylor at least until March 17, 2007.

The Sixth Circuit employs the "economic reality test" to determine whether a defendant is

12

an employer subject to liability under the FLSA. Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." Id. (quoting McLaughlin v. Seafood, Inc., 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)). Whether a party constitutes an employer is a legal determination. Id. (citing Donovan v. Brandel, 736 F.2d 1114, 1116 (6th Cir. 1984) ( "[T]he determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law."). The economic reality test considers the alleged employer's power to hire and fire the person, supervision and control of schedules and conditions of employment, determination of the rate and method of payment and the maintenance of employment records. United States Dept. of Labor v. Cole Enterprises, 62 F.3d 775, 778 (6th Cir. 1995); see also Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

The FLSA defines "employ" as "to suffer or permit to work," which requires actual or constructive knowledge by the employer of the employee's overtime work. 29 U.S.C. § 203(g); Bjornson v. Daido Metal U.S.A., Inc., 12 F. Supp. 2d 837, 842 (N.D. Ill. 1998); accord Davis v. Food Lion, 792 F.2d 1274, 1276-77 (4th Cir. 1986). Thus, Defendants Leading Edge, Thomas and Boothe, PLLC, and Thomas & Associates CPA's could be liable under the FLSA only if they had actual or constructive knowledge that Plaintiff had performed unpaid overtime work for those specific entities.

Even assuming the truth of Plaintiff's claims that she worked every weekend through March 17, 2007, Plaintiff has not shown that any of that work was done for Defendants Leading Edge, Thomas and Boothe, PLLC, or Thomas & Associates CPA's. In this case, while

13

Defendants Leading Edge, Thomas and Boothe, PLLC, and Thomas & Associates CPA's may have been Plaintiff's employer for FLSA purposes, they were not her employer for work that she claimed to perform on the weekends at the direction of Defendant Taylor. Plaintiff has admitted that Defendant Taylor paid her for all the weekend work she alleges she did, just that he did not pay her at a time and a half rate. (Docket Entry No. 58-4, Larson Deposition at 98-99, 235). Plaintiff further admits that she did not tell Defendants Thomas or Boothe that she was working any weekends in any capacity. Id. at 94-95, 98, 180-82. Defendant Taylor paid Plaintiff for the work she did on the weekends, issued Plaintiff a W-2, and directed her work and working hours and did so for the benefit of Defendant Taylor's own business (collecting his receivables), not for Thomas & Boothe. (Docket Entry No. 43, Taylor Affidavit at ¶¶ 6-7). Accordingly, Defendants Leading Edge, Thomas and Boothe, PLLC, and Thomas & Associates CPA's were not Plaintiff's employer for this work and they are entitled to summary judgment on Plaintiff's FLSA claims.

Finally, because Plaintiff's Title VII and FLSA claims should be dismissed, the Court lacks subject matter jurisdiction over Plaintiffs' remaining state law claims. As such, Defendants' motion for summary judgment is granted and Plaintiff's state law claims that are hereby dismissed without prejudice.

For the above stated reasons, the Defendants' motions for summary judgment (Docket Entry Nos. 38 & 44) should be granted. Given the Court's disposition of the issues above, the Court need not address the matters in Defendants' motion to strike (Docket Entry No. 65), and that motion should be denied as moot.

14

An appropriate Order is filed herewith.

**ENTERED** this the 29th day of March, 2010.

                                        WILLIAM J. HAYNES, JR.
                                        United States District Judge